UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ASHLEY JONES,
*Plaintiff*,

v.                                                   No. 3:25-cv-01607 (VAB)

TARA HOOD, *et al*.,
*Defendants*.

INITIAL REVIEW ORDER

Ashley Jones ("Plaintiff"), formerly incarcerated at York Correctional Institution

("York"), has filed a *pro se* Complaint under 42 U.S.C. § 1983 alleging that prison officials at

York violated her rights under the Eighth Amendment by failing to protect her from an inmate

attack and then failing to provide appropriate medical care afterwards.

For the following reasons, Ms. Jones's Eighth Amendment failure to protect claim may

proceed against Officer Kamal, and the Eighth Amendment deliberate indifference to serious

medical needs claim will proceed against Tara Hood.

The Eighth Amendment deliberate indifference to serious medical needs claims against

Warden Sexton and Deputy Warden Suess will be **DISMISSED**.

All other claims will be **DISMISSED**.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**[1]

While Ms. Jones was incarcerated at York, another inmate named "Delgado" allegedly

began threatening and harassing Ms. Jones. Compl., ECF No. 1 ¶ 1 ("Compl."). Ms. Jones

allegedly informed correctional officer Kamal of this alleged harassment. *Id*. In response to Ms.

---

[1] While the Court does not set forth all the facts alleged in Ms. Jones's Complaint, it summarizes
Ms. Jones's basic factual allegations here to give context to its ruling below.

Jones's complaint, Officer Kamal allegedly secured Ms. Delgado "for only 10 min[utes]." *Id.*

Officer Kamal thereafter allegedly released Ms. Delgado, who attacked Ms. Jones and injured

Ms. Jones's neck and back. *Id.* ¶ 2. Officer Kamal allegedly knew Ms. Delgado was "a serious

threat to staff [and] inmates," thought the attack was "funny," and "took 5 min[utes] to get [Ms.]

Delgado off of [Ms. Jones]" during the attack. *Id.*

Ms. Jones allegedly saw medical staff after Ms. Delgado attacked her. *Id.* ¶ 3. Ms. Jones

allegedly told a nurse that her neck and back were injured. *Id.* The nurse allegedly told Ms. Jones

that Ms. Jones "look[ed] good to [her]" and that she would be "okay" but provided no other

medical aid. *Id.* Ms. Jones allegedly immediately began writing medical staff about her neck and

back pain. *See id.* ¶ 4. After writing medical staff for approximately six weeks, medical staff

allegedly finally saw Ms. Jones. *Id.* Medical staff allegedly conducted X-rays on Ms. Jones's

back and neck. *Id.* ¶ 5. The X-rays allegedly revealed that Ms. Jones had a slipped disk in her

neck and back. *Id.* Medical staff allegedly prescribed muscle relaxers and ibuprofen in the

months to follow. *Id.* ¶ 6.

Ms. Jones allegedly requested medical attention five months after medical staff

conducted X-rays because the pain in Ms. Jones's neck and back had worsened. *Id.* ¶ 7. The

following month, nurse Tara Hood allegedly saw Ms. Jones for a physical. *Id.* ¶ 8. Ms. Hood

allegedly spoke to Ms. Jones about Ms. Jones's neck and back complaints. *Id.* Ms. Hood

allegedly told Ms. Jones that she would call Ms. Jones back to the medical department in two

weeks, but Ms. Hood allegedly never did so. *Id.*

In the following weeks, Ms. Jones allegedly wrote to Ms. Hood, Warden Sexton, and

Deputy Warden Suess about her neck, back, and ankle pain. *See id.* ¶¶ 9–10. Ms. Jones allegedly

received no responses. *Id.* ¶ 10. Shortly after Ms. Jones allegedly stopped writing to these staff

members, she allegedly fell and hurt her back in the common area of a housing unit. *Id.* ¶ 11. That day, Ms. Jones allegedly saw medical staff, who prescribed her muscle relaxers and ibuprofen. *Id.* ¶ 12.

Ms. Jones allegedly continued to experience pain in her neck and back after that appointment. *Id.*  ¶ 13. Two months after that appointment, Ms. Jones allegedly saw a nurse at sick call for neck, back, and ankle pain. *Id.* ¶ 14. The nurse allegedly told Ms. Jones that there was nothing she could do for Ms. Jones because Ms. Jones had to see Ms. Hood. *Id*. Ms. Jones allegedly wrote to Ms. Hood again, asking to be seen for her neck and back pain. *Id.* ¶ 15. Ms. Jones allegedly received no response. *Id.* Ms. Jones allegedly has filed health services remedies and written Warden Sexton and Deputy Warden V. *Id.* ¶¶ 16–18. She allegedly received no responses. *Id.* ¶¶ 17–18. Ms. Jones allegedly spoke to Deputy Warden V and sought assistance from a victim's advocate. *Id.* ¶¶ 18–19. Ms. Jones allegedly was supposed to be seen by an orthopedic doctor after the attack, but, to date, she allegedly had not seen one. *Id.* ¶ 23.

## II.    STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* dismiss a complaint, or any portion of it, that is "frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents

and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted'" (quoting 28 U.S.C. § 1915A)).

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P. 8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d

4

Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford *pro se* litigants).

## III.    DISCUSSION

Ms. Jones's Complaint most strongly suggests claims related to (1) Officer Kamal's failure to protect Ms. Jones from an inmate attack and (2) medical staff's deliberate indifference to Ms. Jones's neck and back injuries. *See* Compl. at 6.

The Court discusses each claim in turn.

### A.  The Failure to Protect Claim

The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of ... inmates." *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). "[P]rison officials have a duty ... to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal quotations omitted); *see also Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997). However, "not every injury suffered by one prisoner from another prisoner establishes constitutional liability on the part of the prison official." *Rivera v. Hackett*, No. 3:18-CV-969 (MPS), 2018 WL 3489587, at *2 (D. Conn. July 18, 2018) (citing *Farmer*, 511 U.S. at 834). Rather, a prison official violates a prisoner's Eighth Amendment protection against cruel and unusual punishment only when two requirements are met. *Id.*

First, the plaintiff must prove that the deprivation was "objectively, sufficiently serious[.]" *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). If the claim is based on the defendants' failure to prevent harm, the plaintiff must prove that she is "incarcerated under conditions posing a substantial risk of serious harm." *Id.* There is no "bright line test" to determine whether a risk of serious harm is "substantial" for Eighth Amendment purposes. *Lewis v. Siwicki*, 944 F.3d 427, 432 (2d Cir. 2019). The court must "assess whether society considers

the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk," i.e., "the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling v. McKinney*, 509 U.S. 25, 36 (1993) (emphasis in original).

In this context, "[a] plaintiff may show a substantial risk of harm from a specific assailant, or a more general risk of harm due to the conditions at the time of the attack." *Hurst v. Perez*, No. 15 CV 4703 (VB), 2017 WL 187532, at *2 (S.D.N.Y. Jan. 13, 2017). A plaintiff "need not show [s]he was 'especially likely to be assaulted by the specific prisoner who eventually committed the assault.'" *Id.* (quoting *Farmer*, 511 U.S. at 843). And "a substantial risk of harm can exist for purposes of deliberate indifference, regardless of whether a direct threat or attack actually occurs." *Hartry v. Cnty. of Suffolk*, 755 F. Supp. 2d 422, 436 (E.D.N.Y. 2010).

Second, the plaintiff must prove that the prison official acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 302–03). This requirement is based on the principle that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Id.* (quoting *Wilson*, 501 U.S. at 297). The prison official must have disregarded an excessive risk to the prisoner's health or safety. *See id.* at 837. Whether an official had knowledge of a substantial risk of harm is a question of fact "subject to demonstration in the usual ways, including inference from circumstantial evidence." *Id.* at 842.

"In cases involving the failure to prevent an attack from another inmate, a prisoner may prove deliberate indifference by showing that the official had actual knowledge of a 'longstanding, pervasive, well-documented, or expressly noted' substantial risk of inmate attacks." *Nieman v. Cheney*, No. 3:24-CV-01366 (KAD), 2024 WL 4880710, at *3 (D. Conn.

6

Nov. 25, 2024) (emphasis omitted) (quoting *Farmer*, 511 U.S. at 842–43). This requirement may be satisfied if "the prisoner alleges that he informed correctional officials about a specific fear of assault prior to being assaulted," so long as the "information provided to correctional officials [is] ... sufficiently detailed so as to establish that the correctional officials were sufficiently aware of the risk of harm at issue." *Pagan v. Colon*, No. 3:22-CV-00001 (KAD), 2022 WL 475176, at *4 (D. Conn. Feb. 16, 2022). A prison official who ignores a prisoner's "specific, repeated, and urgent expressions of fear for his safety" is "subjective[ly] aware[ ] of, and deliberately indifferent to" a substantial risk of serious harm. *See Morgan v. Dzurenda*, 956 F.3d 84, 90 (2d Cir. 2020).

Ms. Jones's allegations, taken as true, satisfy both requirements. As to the objective requirement, Ms. Jones's allegation that Officer Kamal knew that Ms. Delgado was "a serious threat to staff [and] inmates," Compl. ¶ 2, is insufficient to suggest a substantial risk of harm. *See Thomas v. Demeo*, No. 15-CV-9559, 2017 WL 3726759, at *8 (S.D.N.Y. Aug. 28, 2017) (dismissing failure to protect claim where plaintiff "merely alleged that he was celled with an inmate who was known to be violent"). But Ms. Jones's allegation that she informed Officer Kamal that Ms. Delgado was threatening and harassing her, Compl. ¶ 1, is sufficient to suggest a substantial risk of harm. *See Morgan*, 956 F.3d at 90 (concluding that "detailed" inmate request forms plaintiff sent to defendants "explicit[ly]" describing "threat" that specific inmate posed to plaintiff were sufficient to satisfy objective requirement). Accordingly, Ms. Jones's allegations satisfy the objective requirement.

As to the subjective requirement, by telling Officer Kamal that Ms. Delgado had been threatening or harassing Ms. Jones, Compl. ¶ 1, she informed Officer Kamal of "a specific fear of assault prior to being assaulted" in sufficient detail "to establish that the correctional officials

were sufficiently aware of the risk of harm at issue." *Pagan*, 2022 WL 475176, at *4. While Officer Kamal responded by securing Ms. Delgado, Officer Kamal allegedly did so "for only 10 min[utes]." Compl. ¶ 1. The Court infers that securing Ms. Delgado at all suggests Officer Kamal's "subjective awareness" of the substantial risk of harm posed by Ms. Delgado to Ms. Jones. *Morgan*, 956 F.3d at 90. And the Court infers that securing Ms. Delgado "for only 10 min[utes]," Compl. ¶ 1, combined with Officer Kamal's view that the attack was "funny," *id.* ¶ 2, suggests Officer Kamal's deliberate indifference to that substantial risk of serious harm. *See Morgan*, 956 F.3d at 90 (subjective requirement satisfied when defendants "made dismissive remarks" to plaintiff and "ignored [his] requests for help"). As a result, Ms. Jones's allegations also satisfy the subjective requirement.

Accordingly, because Ms. Jones's allegations satisfy both the objective and subjective requirements, her failure to protect claim may proceed against Officer Kamal.

**B.  The Deliberate Indifference to Serious Medical Needs Claim**

The Eighth Amendment forbids deliberate indifference to prisoners' serious medical needs. *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013). To state a claim for deliberate indifference to serious medical needs, the prisoner must allege facts satisfying two requirements, one objective and one subjective. *See id.*

The objective requirement requires the prisoner to demonstrate that the alleged deprivation of medical care was "sufficiently serious." *Farmer*, 511 U.S. at 834 (internal quotation marks omitted). The prisoner must show that he was "actually deprived of adequate medical care" by an official's failure "to take reasonable measures in response to a sufficiently serious medical condition." *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006),

8

abrogated on other grounds as recognized by *Kravitz v. Purcell*, 87 F.4th 111, 119, 122 (2d Cir. 2023).

This objective factor in turn requires a court to make two inquiries. First, the court must determine whether the inmate was "actually deprived of adequate medical care." *Salahuddin*, 467 F.3d at 279. Second, the court must determine "whether the inadequacy in medical care is sufficiently serious," which in turn requires an examination of "how the offending conduct is inadequate and what harm, if any, the inadequacy has or will likely cause the prisoner." *Id.* at 280. This examination differs based on whether the issue is failure to provide *any* medical treatment, inadequate treatment, or delayed treatment. *See Smith v. Carpenter*, 316 F.3d 178, 185–86 (2d Cir. 2003). This inquiry is necessarily contextual and fact specific. *Id.* at 185.

"[I]f the unreasonable medical care is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious." *Salahuddin*, 467 F.3d at 280 (citing *Smith*, 316 F.3d at 185–86). Deciding whether a condition is sufficiently serious requires courts to consider whether "'a reasonable doctor or patient would find [it] important and worthy of comment,' whether the condition 'significantly affects an individual's daily activities,' and whether it causes 'chronic and substantial pain.'" *Id.* (alteration in original) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)). A medical condition may not initially be serious, but may become serious because it is degenerative and, if left untreated or neglected for a long period of time, will "result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136–37 (2d Cir. 2000).

If treatment is given but the inmate alleges it is inadequate, "the seriousness inquiry is narrower." *Id.* The court then focuses on the "inadequacy itself." *Valdiviezo v. Boyer*, 752

9

F. App'x 29, 32 (2d Cir. 2018) (summary order). If, on the other hand, "the basis for a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged *delay* or *interruption* . . . rather than the prisoner's *underlying medical condition* alone" to determine whether the deprivation is objectively sufficiently serious. *Smith*, 316 F.3d at 185 (emphasis in original). The delay must have "exacerbated [a plaintiff's] injuries or caused [ ] harm other than possible discomfort or pain[.]" *Brockett v. Lupis*, No. 3:21-CV-355 (KAD), 2022 WL 1658835, at *8 (D. Conn. May 25, 2022).

As to the subjective requirement, "[a]n official acts with the requisite deliberate indifference when that official 'knows of and disregards an excessive risk to inmate health or safety,'" which is "a state of mind 'equivalent to the familiar standard of recklessness' as used in criminal law." *Smith*, 316 F.3d at 184 (quoting *Chance*, 143 F.3d at 702). Conduct may rise to the level of deliberate indifference when the prison official's act or failure to act "evinces 'a conscious disregard of a substantial risk of serious harm.'" *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (quoting *Farmer*, 511 U.S. at 839).

Allegations constituting negligence or medical malpractice are insufficient to support an Eighth Amendment deliberate indifference claim. *Thomas v. Wolf*, 832 F. App'x 90, 92 (2d Cir. 2020) (summary order) (citing *Hathaway*, 99 F.3d at 553). "A plaintiff cannot establish a claim of deliberate indifference on a theory that the defendant failed to take some available alternative or additional diagnostic techniques or forms of treatment when the defendant's decision is based on sound medical judgment." *Clark v. Quiros*, 693 F. Supp. 3d 254, 286 (D. Conn. 2023) (noting that "[a] medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice ....."). Further, a patient's disagreement

with the treatment provided does not rise to the level of deliberate indifference. *See Wright v. Rao*, 622 F. App'x 46, 47 (2d Cir. 2015) (summary order) (citing *Chance*, 143 F.3d at 703).

Applying these principles here, the Court liberally construes Ms. Jones's allegations to generally suggest that she was "actually deprived of adequate medical care." *Salahuddin*, 467 F.3d at 279. Thus, to determine "how the offending conduct [wa]s inadequate and what harm, if any, the inadequacy … likely cause[d] …," *id.* at 280, the Court must consider whether there was a failure to provide any medical treatment, inadequate treatment, or delayed treatment. *See Smith*, 316 F.3d at 185–86 ("There is no need to distinguish between a prisoner's underlying serious medical condition and the circumstances of his serious medical need when the prisoner alleges that prison officials have failed to provide general treatment for his medical condition. In a case like this, however, where the prisoner is receiving appropriate on-going treatment for his condition, but, instead brings a narrower denial of medical care claim based on a temporary delay or interruption in treatment, the serious medical need inquiry can properly take into account the severity of the temporary deprivation alleged by the prisoner." (cleaned up)). Here, medical staff conducted X-rays on Ms. Jones's back and neck and prescribed muscle relaxers and ibuprofen, Compl. ¶¶ 5–6, 12, so the Complaint does not suggest that medical staff failed to provide any medical treatment. Rather, the Complaint suggests that the treatment given was inadequate or delayed.

As to the allegedly inadequate medical treatment, the treatment medical staff prescribed to Ms. Jones—namely, muscle relaxers and ibuprofen, *id.* ¶¶ 6, 12—seemingly did not resolve Ms. Jones's neck and back problems. But disagreement over the treatment provided does not rise to the level of deliberate indifference. *See Wright*, 622 F. App'x at 47; *see also Chance*, 143 F.3d at 703 ("[T]hat a prisoner might prefer a different treatment does not give rise to an Eighth

Amendment violation"). Nevertheless, at this stage of the case, these allegations are sufficient to move the case forward to discovery against Tara Hood, the nurse. Other than to suggest supervisory liability, the Complaint is insufficient to bring such claims against Warden Sexton and Deputy Warden Suess. *See Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020) ("[F]or deliberate-indifference claims under the Eighth Amendment against a prison supervisor, the plaintiff must plead and prove that the supervisor had subjective knowledge of a substantial risk of serious harm to an inmate and disregarded it.").

Accordingly, Ms. Jones's Eighth Amendment deliberate indifference to serious medical needs claim will proceed.

**ORDERS**

Ms. Jones may pursue her Eighth Amendment failure to protect claim against Officer Kamal in an individual capacity only,[2] and also may pursue the Eighth Amendment deliberate indifference to serious medical needs claim against Tara Hood in an individual capacity only.

The Eighth Amendment deliberate indifference to serious medical needs claims against Warden Sexton and Deputy Warden Suess will be **DISMISSED**.

The Court enters the following orders:

**(1) The Clerk of Court shall** verify the current work address of Officer Kamal and Nurse Tara Hood with the Department of Correction Legal Affairs Unit. The Clerk of Court shall mail a copy of the Complaint, this Order, and a waiver of service of process request packet to Officer Kamal and Nurse Tara Hood at their respective confirmed addresses by **May 29, 2026,** and shall report to the Court on the status of the requests by **June 12, 2026**. If either Defendant

---

[2] Ms. Jones also seeks damages from Defendants in their official capacities, *see* Compl. at 6, but such claims are barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

fails to return the waiver request, the Clerk of Court shall arrange for in-person service by the

U.S. Marshals Service and that Defendant shall be required to pay the costs of such service in

accordance with Federal Rule of Civil Procedure 4(d).

**(2) The Clerk of Court shall** send Ms. Jones a copy of this Order.

**(3) The Clerk of Court shall** send a courtesy copy of the Complaint and this Order to

the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

**(4)** The Defendants shall file a response to the Complaint, either an Answer or a motion

to dismiss, by **September 4, 2026**. If they choose to file an Answer, they shall admit or deny the

allegations and respond to the cognizable claims recited above. They also may include all

additional defenses permitted by the Federal Rules.

**(5)** Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be

completed by **December 18, 2026**. Discovery requests need not be filed with the court.

**(6)** All motions for summary judgment shall be filed by **January 29, 2027**.

**(7)** Under Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion

within twenty-one (21) days of the date the motion was filed. If no response is filed, or the

response is not timely, the dispositive motion can be granted absent objection.

**(8)** If Ms. Jones changes her address at any time during the litigation of this case, Local

Court Rule 83.1(c)(2) provides that she MUST notify the court. Failure to do so can result in the

dismissal of the case. Ms. Jones must give notice of a new address even if she is incarcerated.

Ms. Jones should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to

just put the new address on a letter without indicating that it is a new address. If Ms. Jones has

more than one pending case, she should indicate all the case numbers in the notification of

change of address. Ms. Jones should also notify the Defendants or the attorneys for the Defendants of her new address.

(9) Ms. Jones shall utilize the Prisoner E-filing Program when filing documents with the court. Ms. Jones is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on the Defendants' counsel by regular mail.

(10) The Clerk of Court shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to Ms. Jones.

**SO ORDERED** at New Haven, Connecticut, this 11th day of May, 2026.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE